## Benjamin R. De Young v. Walston H. Brown et al.

1. ULTRA VIRES—*Payment of Unauthorized Salaries.*—The payment by a corporation to an officer of a salary in excess of that allowed by the by-laws is not an unlawful and void act in the sense that it is *ultra vires*, but is unjustifiable and voidable as against innocent stockholders who are injured thereby.

2. CORPORATIONS—*Salaries of Directors.*—A director of a corporation is not entitled, as against non-assenting stockholders, to receive a salary, however justly earned, unless previously authorized by the by-laws of the corporation or by resolution of the board of directors.

3. SAME—*Officers to Account for Excess of Salary.*—An officer of a corporation must account for any excess of salary received by him over that to which he is lawfully entitled, at the suit of any non-assenting

De Young v. Brown.

stockholder who is himself free from blame and has been diligent in asserting his rights.

4. `STOCKHOLDER—*Loss of Rights by Laches, etc.*—A stockholder who has knowledge of and who tacitly consents to the drawing of an unauthorized salary by an officer of his corporation will be debarred from relief in equity as to such salaries.

5. DECREES—*Recovery of Misappropriated Funds—Frame of.*— While it is proper in a suit to compel the restoration to a corporation of misappropriated moneys, to require such moneys to be paid to the corporation and not to the injured stockholders personally, yet where the effect is to benefit the shareholders who assented to and participated in su ɔh misappropriation, as well as to shareholders innocent and free from all assent in the transaction, the decree should be so framed as to benefit o ɹly the innocent shareholders.

**Bill by Stockholders,** to compel the restoration of misappropriated funds.   Error to the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.   Heard in this court at the March term, 1896.   Reversed and remanded with directions, etc.   Opinion filed June 18, 1896.

DUNCAN & GILBERT, attorneys for plaintiff in error.

FLOWER, SMITH & MUSGRAVE, attorneys for defendants in error.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a bill filed by the defendants in error, comprising the minority stockholders in the Morden Frog and Crossing Works, a corporation, against said corporation and the plaintiff in error, its former secretary and treasurer, and William J. Morden, its president.

The purpose of the bill was to compel said William J. Morden and the plaintiff in error to restore to the corporation moneys alleged to have been received by them severally by way of salaries, and by Morden alone by way of royalties and otherwise, in excess of what it was alleged they were entitled to receive, and for general relief.   Pending the suit and before final decree, an adjustment was arrived at between the complainants and Morden, and the suit was dismissed as to him.   The cause, however, proceeded to a hearing as to the defendant De Young, and a decree was

recovered against him, requiring him to pay to the corporation the sum of $14,213.69, which was made up of $11,083.27 found to have been received by him in excess of the salary to which he was entitled, with $3,130.42 interest thereon.

This writ of error is prosecuted for a review of such decree.

There is no claim that De Young improperly received any moneys except by way of excessive salary, nor that he received such except with the full knowledge and acquiescence of Morden, the president of the corporation, who, together with De Young, owned or controlled a large majority of the stock.

The claim was merely that the salary received by De Young was not authorized by any by-law of the corporation, or resolution of its board of directors.

The salary that De Young received was at the rate of $2,500 a year during the period he was secretary, from September 1, 1886, to August 1, 1888, and was at the rate of $3,500 per year while he was both secretary and treasurer, from August 1, 1888, to January 1, 1891, whereas it is agreed that he was entitled to receive no more than $500 a year during any part of such time.

The payment to him of such salary was not, therefore, an unlawful and void act in the sense that it was *ultra vires* the corporation, but was unjustifiable and voidable because not properly authorized, as against any innocent stockholder who was thereby injured.

De Young came to be a stockholder and director, and the secretary and treasurer of the corporation through the instrumentality of one of the complainants, Preston C. Houston, who was the second largest stockholder in the corporation, and who, for purposes of his own, antagonistic to W. J. Morden, the president and principal stockholder, transferred to De Young, in September, 1886, all of his stock in the corporation, under the arrangement between themselves that De Young should pretend to be the owner of the stock and secretly represent him, Preston, and endeavor to control Morden, the president and largest stockholder, as Houston

could not do, in the management of the corporation.  For his services in such regard Houston agreed to and did pay De Young $1,000 per year from September 6, 1886, in addition to any salary that might be given to him by the corporation for his services as treasurer.

So equipped by Houston, De Young was immediately made a director and secretary of the corporation, and in August, 1888, was made treasurer also, and so continued until the end of December, 1890.

During this period of about four and a half years, De Young and Morden, together, held a large majority of the stock, and they appear to have managed the affairs of the corporation as they chose, and apparently with considerable success to all concerned.  It was while so situated that the alleged excessive salaries were received by both Morden as president and De Young as secretary and treasurer, with the full knowledge and understanding of each other, but without the knowledge of the other stockholders, except Houston.

In December, 1890, De Young transferred back to Houston the shares he had received from him, and Houston again became a director of the corporation, and De Young ceased to be either stockholder or officer.

At that time Morden himself owned more than a majority of all the stock of the corporation, and Houston owned 1,590 shares, the rest being distributed among the other complainants.

It is certain that Houston understood and contemplated from the first that De Young was to have from the corporation an increase of salary over the $500 per year which had prevailed, and it is fairly inferable that he might at any time have known by inquiring of De Young, how much salary he, De Young, was receiving, and how much Morden was receiving.  He did know, in 1888 or 1889, how much Morden was being paid, and told De Young at the beginning, that it made no difference to him how much salary he, De Young, should get; and in July, 1888, he wrote to De Young that for the next year he should expect him to get enough

salary out of the corporation to relieve him, Houston, from any longer paying the $1,000 personally.

Houston also testified that he was informed at the end of the first year that DeYoung had been getting $1,500; that at the end of the second year De Young told him he was getting $2,500, and that in June, 1890, De Young told him he was receiving $3,500; but Houston never dissented because of it until about the time this suit was begun in July, 1891.

It is undoubtedly the law that a director of a corporation is not entitled, as against non-assenting stockholders, to receive a salary, however justly earned, unless previously authorized by the by-laws of the corporation, or by resolution of the board of directors.

Conceding such to be the law, it is admitted that DeYoung is accountable for the excess of salary received by him over the authorized sum of $500 per year, at the suit of any non-assenting stockholder who is himself free from blame and has been diligent in the assertion of his rights.

But it is insisted that as against the complainant Houston, De Young may hold the salary he received.

Such was the report of the master to whom the cause was first referred, and the trial judge, before whom such report was heard, well said:

" The court is of opinion that the knowledge of Houston for the space of two years and upward of the amount of salary received by Morden (and by De Young), and his tacit consent thereto and conduct shown by his own evidence and letters in the record, effectually debar him from any relief in this case as to the salaries of Morden and De Young. He who seeks equity should come with clean hands. Pomeroy's Eq. J., Secs. 398, 818 and 819; Cook on Stockholders, Secs. 728 to 733; Hall v. Harper, 17 Ill. 82; Hyde Park Gas Co. v. Kerber, 5 Brad. 132."

And by the interlocutory decree then entered, the court found, among other things, " that the salaries received as aforesaid by William J. Morden and Benjamin R. De Young were so received with the knowledge, acquiescence and con-

sent of complainant, Preston' C. Houston, and that said Preston C. Houston is not entitled to any relief against said Morden or De Young, or either of them, with respect to the said salaries, but that said complainants, Walston H. Brown, James M. Flower, Columbus R. Cummings and O. S. Gaither, are entitled to relief in respect thereto."

By the same interlocutory decree which contained the findings just quoted, the cause was again referred to a master, "to state an account as between the corporation and each of its stockholders as to the amounts which would be due them respectively in case a dividend should be paid to stockholders by reason of any moneys which he may find due to the corporation from said Morden and De Young respectively in this accounting, deducting from the amount found due the complainant Houston the proportionate share to which he would be entitled by reason of all moneys due said corporation by said De Young, and of all moneys due said corporation by reason of illegal salary paid to said Morden."

It was at this stage of the cause that the settlement was had with Morden and the cause dismissed as to him.

The accounting proceeded, however, as to De Young, and upon the coming on to be heard of the master's report in that regard before a different judge from him who entered the interlocutory decree, a holding contrary to that decree was made, and the final decree appealed from was entered, the effect of which was to give to Houston the same relief as against De Young which was given to the other complainants.

We concur with counsel for De Young, and with the judge who entered the interlocutory decree, that Houston was not entitled to any relief against De Young. Had Houston been sole complainant, no rule of equity with which we are acquainted, or to which we have been referred, would require De Young, who was but his representative, as between themselves, in all that De Young did, to repay him compensation that had been agreed between them that De Young might receive for his services.

Considering the original arrangement between Houston and De Young, under which De Young was to get what salary he could from the corporation, and the subsequent knowledge of Houston that De Young was receiving much more than $500 per year from the corporation, as shown in part, although not wholly, from his letters and testimony already referred to, and the long acquiescence of Houston under that knowledge, we think that Houston may not, in equity, complain of and recover back from De Young any part of such excessive salary. The question then arises, does it advantage him that he is joined with others in the suit?

It can not be disputed but that the effect of the decree, which requires the money to be paid to the corporation, is to give to Houston the benefit of such proportion of the sum so required to be paid, as his stock bears to the whole stock.

The computation made by the master shows that proportion to amount to $4,523.56. That computation also shows that the proportion of the amount decreed to be paid by De Young, to which Morden, as the owner of 2,582 shares of the stock, would be indirectly benefited, is the sum of $7,345.81.

While the proper course in suits of this character, to compel restoration to the corporation of moneys improperly appropriated, may very well, as a general rule, be to require the misappropriated funds to be paid to the corporation, and not to the injured shareholders personally, yet where the effect of such a decree is to benefit the shareholders who assented to and participated in the misappropriation of the funds, as well as to such shareholders as were innocent and free from all assent or obliquity in the transaction, we think the decree should be so framed as to benefit only the latter and not the former. Complete and perfect relief to those who are entitled to it is all that ever ought to be given in equity. The inequity of doing differently is well illustrated by this decree.

Out of a total of 5,000 shares of stock, Houston and Morden were the owners of over 4,100 shares, and although they assented to and participated in the very misappropriation

for which De Young is required to account, their stock is benefited and actually increased in value to the extent of over forty-one fiftieths part of the whole sum decreed to be paid by DeYoung, their fellow wrong-doer. This seems to be manifestly inequitable. The owners of the other 900 shares should, it is true, be made whole, but Morden and Houston should not be rewarded for their own culpability and participation in the very acts for which De Young is accountable.

The true way, as we conceive, in such a case, would be to do as directed by the court who entered the interlocutory order, viz: Treat the excessive salary as in the nature of a fund out of which a dividend should be declared, and give to the innocent shareholders the proportion thereof which their stock bears to the whole stock, leaving the balance to DeYoung, to whom his co-wrongdoers, in conjunction with himself, appropriated it.

Equity should not, and will not, aid one wrongdoer as against another, and hence Morden and Houston should have no relief against De Young, although the other stockholders should.

If the element here existed that the corporation needed this money that De Young received, in order to enable it to carry on its business, other considerations would present themselves, but there is no such element in the case.

It appears, by inference at least, that the corporation was fairly prosperous, and that in fact at the very time this excessive salary was received, it was declaring dividends to its stockholders.

Then how manifest it is that complete equity will be done if the innocent, non-assenting stockholders shall be paid such additional sums as would equal the dividends they might have received if De Young had not received what he was not entitled to; and who else may complain?

True, the declaring of dividends is usually a matter within the sound discretion of the directors of a corporation, and until dividends have been declared, the moneys of a corporation belong to itself and not to its individual stockholders.

But the corporation united with De Young and Morden in the answer to complainants' bill, and therein set up and insisted that complainants knew of, and acquiesced in, the salaries paid to De Young and Morden, and denied that in equity the complainants should be permitted to claim a return of such salaries to the corporation. Therefore, where, as here, the assertion of claim to the moneys wrongfully diverted from the corporation is made only by individual shareholders, whose prospective dividends have been lessened and they thereby injured because of the wrongdoing of certain officers of the corporation who are their co-shareholders, and where it appears that the wrongdoing complained of was not *ultra vires* the corporation, and that the corporation did not need the misapplied funds for any corporate purpose except to divide as dividends, and where the corporation itself insists that in equity it is not entitled to a return of the moneys, it seems that full reparation may be attained and complete equity be done by giving to the injured shareholders, in such a manner as their co-shareholders who participated in the wrongful acts shall not share, all that they have lost by reason of such wrongdoing.

In such a case, reparation to the shareholders who did not participate in, or assent to, the wrongful acts, is all that equity ought to concern itself with, and such reparation should be made in such a manner as will not bestow a premium or reward upon those other shareholders by whose participation and acquiescence the very iniquity complained of was committed.

To work out relief in this case through the treasury of the corporation, in the ordinary way, is to place the undeserving upon equality with the meritorious. A decree should be framed whereby the money ordered to be paid to the corporation should, in some way, be limited to the use of the innocent complainants—Brown, Flower, Cummings and Gaither only, to the exclusion of Houston and Morden.

In our opinion that may be done by decreeing against De Young that he pay to the corporation the amount he wrongfully received, with directions that such decree be satisfied

De Young v. Brown.

upon payment by him to Brown, Flower, Cummings and Gaither, the proportionate part thereof which they would have received, had the same been declared as a dividend.

But equity, disregarding forms and being observant only of requiring that to be done which is right, might be completely satisfied with the simpler requirement that the moneys to which the deserving shareholders are entitled, should be paid directly to them.

Whether the moneys to which said meritorious shareholders are entitled shall be secured through a reversal of the decree and a remanding of the cause, with directions to the Circuit Court to enter a new decree in one or the other of the forms indicated, or by a decree to be entered by this court, we will receive suggestions of counsel concerning—we only insisting that appellant shall be required to pay no more than will make said meritorious shareholders whole, and that such meritorious shareholders shall have what he does pay.

Perhaps for the reason that no such case was ever before complained of, we have been referred to no authority, and know of none, for affording certain relief to the innocent stockholder without giving the culpable one what he is not entitled to, as would be the result if the money be decreed to be paid, generally, into the corporation treasury. But the lengthening reach of equity into the manifold intricacies of modern business, should not be drawn back simply for lack of authoritative decisions to guide us, where reason and every equitable consideration point the way with so much clearness.

In Dunphy v. Traveler Newspaper Association, 146 Mass. 495, it was held that a bill was not multifarious because of joining a claim against the president and treasurer of a corporation for moneys improperly received by him for salary, etc, with a claim against the corporation for the payment of a dividend; and the intimation was made that, except for lack of proper parties, inequalities in previously declared dividends might be properly adjusted in the same suit.

Having jurisdiction to compel De Young to account for

the salary wrongfully received by him, it strikes us as being a manifest falling short of appropriate relief, to deny jurisdiction to compel the application of so much of such money in a manner that will give to them who have been injured, and are in a position to complain, their just proportion of it, and to refuse any part of it to them who are not equitably entitled to it.

The decree of the Circuit Court will therefore be reversed and the cause remanded, with directions to enter a new decree in conformity with this opinion, unless, upon suggestion of counsel, by way of motion made within five days, it shall be determined to enter a new decree in this court. Reversed and remanded with directions.